SNEED, J.,
delivered the opinion of the Court.
The statute regulating the remedy by action of replevin was intended to give to the owner of a chattel who was wrongfully deprived of its possession a quick *738 and convenient method of regaining tlie possession, and at once trying the question of title. And on the other hand it was intended to provide a perfect protection to the citizen against the great abuses incident' to a remedy so summary in its nature, by which property in the possession of one party is taken and delivered to another before the question of title is adjudicated. After the return of the writ, if it- appear that the bond is not sufficient in form, amount of penalty, or in respect to the solvency of the sureties, the Court may remedy the defect by such orders as are necessary, and may hold the plaintiff in custody till said orders are complied with; and the Court may make such other orders as may be considered expedient to secure the rights of the plaintiff or defendant: Code, s. 3392. The moment the Court acquires jurisdiction of the case, the parties become answerable to these orders and penalties. If the plaintiff part with the property before his right to it is determined, he does so at his peril; and if the bond be worthless and the proceeding to obtain the property be in fraud of the law, the plaintiff may be committed until he comply with the order of the Court in renewal of the bond, and may be compelled to perform such other orders of the Court as may be' necessary to secure the rights of the defendant. Any other, view would, render the action of replevin under our laws an instrument of injustice and oppression, rather than the just and serviceable remedy intended. It will be observed that this case does not involve the question of contempt committed in presence of the Court, and to which *739 the law has limited the power of imprisonment to ten days. But to what extent and under what restrictions does the law vest the Court with the power of imprisonment in this kind of case? It could not have been intended to clothe the Courts with the powers of a despot and to authorize a perpetual or indefinite imprisonment in such cases. But yet the literal import of the statute is so. The words are, that the Court “may hold the plaintiff in custody until said orders are complied with.” We are aware of the delicacy of this question, or of any other growing out of the power of a Court to punish for contempts. But we are necessarily compelled, in settling the rights of these parties, to construe this statute and to define the powers of the Court under it. The plaintiff in this case had given the usual bond in double the estimated value of the property upon suing out the writ of replevin. The suit was begun in January, 1868. It is stated that the bond was then good, but that plaintiff and his surety both became insolvent afterward and prior to the September Term, 1870, when a rule was made upon the plaintiff to make a new bond. The plaintiff being solvent at the time the action was begun, ventured to sell the property because it was expensive to keep. Upon his failure to comply with the rule, a judgment is rendered for the defendants and a rule is made on the plaintiff' to surrender the property to the defendants. In responding to this rule he alleges the sale of the property, the appropriation of the proceeds and his own insolvency. The Court thereupon makes an order upon him to pay the amount of said sale *740 into Court by a given day, or stand committed. Was this a legitimate exercise of judicial authority under this statute ?
It will be observed that the power of the Court to hold the plaintiff in custody is- limited to certain specific causes which have reference to the validity and sufficiency of the bond. If it appear that the bond is insufficient in form, amount of penalty or in respect to the solvency of the sureties^ the Court may remedy the defect by necessary orders, and may hold the plaintiff in custody until such orders are complied with. The purpose of this provision was obviously to prevent fraud and abuses in this action, by which adventurers might get possession of the property upon a false and fictitious security. This feature of the re-plevin law was a necessary safeguard to prevent the abuse of a remedy very liable to abuse. If the power ■of imprisonment had been invested in the Court, at all stages of the cause and on account of the disobedience of any and all rules and orders at any time made in the cause, this specific legislative intent would ■have been plainly indicated in the statute. But such a power is restricted, by the manifest meaning of the statute, to the execution of the bond which is originally given at the institution of the action and as a protection to the party whose property is thus summarily taken out of his possession. But where the plaintiff has acted in perfect good faith in the beginning and given a good bond to indemnify defendant, ■and afterward by misfortune he and his surety both become insolvent, is it still competent for the Court *741 to imprison the plaintiff in default of his compliance with a rule for new security? We think this is not the spirit of the statute. It is the fraudulent inception of the action by a false and worthless bond that the law was intended to reach'. If a party has taken the property of another, upon a worthless bond, willfully and knowingly, and has thus practiced a' fraud upon the law and the Court, he deserves to be severely dealt with, and the Court ought to exercise its powers in such case promptly and rigorously.
The general law upon the subject of contempts provides, that where the contempt consists in an omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he performs it: Code, sec. 4108. The resort to this extreme remedy under this section presupposes the exercise of a sound judicial discretion upon the question whether or not the act ordered to be performed is in fact within the party’s power of performance. For if it be not, the power of imprisonment under the law does not exist. The terms then of the replevin law which authorize the Court to commit the plaintiff to custody until its orders are complied with, must be construed in connection with the general statute of contempts cited above, and must be understood to mean that the Court can not imprison indefinitely or arbitrarily under the replevin laws, but only in cases where the writ has prima facie been surreptitiously obtained on a worthless bond. In the case now in judgment the order is to pay money into Court, and upon failure, to stand committed. It is alleged that *742 the plaintiff had given a good bond and given it in good faith in suing out the writ, but that misfortune had overtaken him; that he is now" poor and utterly unable to pay the money. The alternative is that he stand committed, and for an indefinite time. This would be but imprisonment for debt. We do not understand these replevin laws to confer such powers. In the absence of specific legislation on the subject, the Court should exercise a sound discretion as to the means of first ascertaining whether or not it is in the power of the party to perform the order, and if the disobedience be willful, in fraud of the law and 'in contempt of the Court. If it be found to be so, then this is a proper case for the . exercise of this power of imprisonment. But if it be found that the party is utterly unable to perform the mandate of the Court, the exercise of such a power would be extra-judicial and arbitrary.
Let the judgment be reversed and the cause remanded for further proceedings in' accordance with the’ principles of this opinion.